**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **IVAN A. AVILA,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 18-10898-FDS |
| v. | ) | |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER**

This is an appeal of a final decision of the Commissioner of the Social Security Administration ("SSA"). On July 6, 2017, an Administrative Law Judge ("ALJ") issued a decision concluding that plaintiff Ivan A. Avila was not disabled from February 17, 2015, through the date of the decision. The SSA Appeals Council denied Avila's request for review on March 6, 2018. Avila then filed an action with this Court.

Avila seeks reversal of the Commissioner's decision, and the Commissioner has moved to affirm the decision. For the reasons stated below, the decision will be affirmed.

**I.   Background**

   **A.   Factual Background**

   **1.   Personal History**

Avila is 42 years old. (A.R. 76).[1] He attended high school through the eleventh grade.

---
[1] Avila was 37 years old on February 17, 2015, the date he alleges that his disability began. (A.R. 76).

(A.R. 46). He has been unemployed since he stopped working as a machinist at D. W. Clark in Taunton, Massachusetts. (A.R. 47).[2] He had previously worked as a maintenance mechanic, hand packager, and landscape laborer. (A.R. 65).

## 2. **Medical History**

Avila has a lengthy medical record. He has received treatment for a variety of conditions, including back and shoulder pain. (A.R. 22-29).[3]

On April 6, 2015, Avila saw Dr. Efrain Torres, of Geriatric Internal Medicine Specialists, for back pain. (A.R. 366). Upon examination, he had a backache and some radiculopathy in the right lower extremity, but negative Lasegue sign and stiffness. (*Id.*). His neurological findings included full muscle strength in all muscle groups and intact deep tendon reflexes, and normal gait. (A.R. 366-367). Dr. Torres diagnosed backache, pain in joint site, and insomnia. (A.R. 367). For his backache, Dr. Torres referred Avila for an updated MRI and to the pain clinic, and advised him to use nonsteroidal anti-inflammatory drugs ("NSAIDs"), noting that his backache was a chronic issue. (*Id.*).

On April 15, 2015, Avila visited the St. Luke's Hospital emergency department for back pain. Upon examination, he had lower back tenderness; tender upper right paraspinal muscles; normal gait and motor findings; dorsiflexion of the great toe bilaterally; no first web space paresthesia; and normal sensation, pulses, and deep tendon reflexes. (A.R. 586). He had full strength in the upper and lower extremities. (*Id.*).

On May 6, 2015, Avila saw Dr. Torres for a follow-up appointment concerning his back pain. (A.R. 369-370). Dr. Torres advised him to use NSAIDs and a small dose of narcotics for

---

[2] Avila testified at his ALJ hearing that he did not remember the date he stopped working. (A.R. 47).

[3] Avila's mental-health issues were considered by the ALJ but are not addressed in detail in this opinion because they are not central to the ALJ decision or this appeal. (A.R. 18-21).

2

relief. (*Id.*).

On June 19, 2015, Avila visited the Southcoast Health Facility for a pain management evaluation, complaining of back, neck, and shoulder pain. (A.R. 381). Upon examination, his back had limited range of motion and paralumbar tenderness; his neck had full range of motion; his right shoulder had limited range of motion; and he had normal motor findings and gait. (A.R. 382). He was assessed with lumbar radiculopathy, degenerative disc disease, right shoulder pain, and chronic pain syndrome. (A.R. 383). He was prescribed gabapentin; advised to undergo a lumbar epidural steroid injection; and referred to orthopedic surgery for his right shoulder. (*Id.*).

In August 2015, at a subsequent visit to the Southcoast Health Facility, Avila reported ongoing pain radiating from his neck and shoulder into his legs, and that his pain had improved somewhat with gabapentin. (A.R. 395). Examination findings were the same as his prior appointment and his gabapentin and oxycodone prescriptions were continued. (*Id.*). At a follow-up appointment the next week, examination findings were the same but his treatment with gabapentin was terminated and he was prescribed Tizandine. (A.R. 400-01).

On September 18, 2015, Avila again visited the Southcoast Health Facility for an evaluation of back and leg pain. (A.R. 447). Upon examination, his neck had good range of motion; his back was straight with good range of motion and diffuse tenderness along the lower lumbosacral spine; light touch was intact in the upper and lower extremity dermatomes; his gait was slow but normal; and all motor findings were 5s bilaterally in the upper and lower extremity. (A.R. 447-48). Mark White, a physician's assistant, noted that a medical review of his September 2, 2015 MRI by Dr. Alvin Marcovici showed no clear compressive pathology on any of his nerve roots. (A.R. 448). He was referred for bilateral EMG studies to further evaluate his symptoms. (*Id.*).

3

On September 23, 2015, Avila complained of worsening back pain to Dr. M. Anis Rahman. (A.R. 404). Upon examination of his shoulder, there was tenderness and pain with motion, decreased active range of motion, but passive range was normal. (*Id.*). Upon examination of his lumbar spine, there was tenderness and mild paraspinal muscle spasm; straight leg raising was positive to 60 degrees on both sides; flexion was 60 degrees, lateral bending was 30 degrees, and extension was 15 degrees. (*Id.*). Dr. Rahman assessed status post-traumatic injury with subsequent multiple right shoulder surgeries, chronic shoulder pain, and chronic back pain. (*Id.*). He noted that Avila's shoulder and back were significant problems and because of his shoulder pain, he has difficulty using his right arm fully. (A.R. 406).

On October 9, 2015, the advising physician to the Disability Determination Service at the initial level assessed that Avila had the following residual functioning capacity ("RFC"): he could lift up to 20 pounds occasionally and 10 pounds frequently; sit for six hours; stand or walk for four hours in an eight-hour workday; had limitations in the ability to push and or pull with the right upper extremity; could occasionally reach overhead with the right upper extremity; could perform unlimited handling, fingering, and feeling; could occasionally climb, balance, stoop, kneel, crouch, or crawl; could never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to workplace hazards. (A.R. 76-86, 88-99).

In November 2015, Avila was seen by Dr. Marcovici at the Southcoast Health Facility. (A.R. 451). Upon examination, his spine had normal curvature, limited range of motion, negative Lhermitte's sign and Spurling's test, paravertebral muscular tenderness, positive straight leg raise, negative crossed leg raise, and his gait was antalgic left. (*Id.*). His sensation was intact to light touch in the upper and lower extremities except that it was decreased in the right lower extremity, and his motor findings were all 5s. (*Id.*). Dr. Marcovici noted that his

4

October 2015 EMG report showed no evidence of radiculopathy and assessed his lumbar herniated disc and lumbar radiculopathy, recommending a surgical discectomy. (A.R. 452).

Later that month, Avila underwent a lumbar laminectomy and discectomy at the L5-S1 level. (A.R. 410).

On December 3, 2015, Avila visited the Southcoast Health Facility for a follow up visit. (A.R. 452-53). A Medrol Dosepak was ordered to supplement his pain management medications and he was advised to follow up in four weeks. (*Id.*).

On February 19, 2016, Dr. Jane McInerny, an advising physician to the Disability Determination Service at the reconsideration level, reviewed an updated record, including evidence of Avila's back surgery, and assessed him with the following RFC: he could lift up to ten pounds occasionally and less than ten pounds frequently; sit for six hours; stand or walk for four hours in an eight-hour workday; occasionally climb, balance, stop, kneel, crouch, or crawl, but never climb ladders, ropes, or scaffolds; had limited ability to push or pull with the right upper extremity; could occasionally reach overhead with the right overhead extremity; had unlimited ability to handle, finger, and feel; and should avoid concentrated exposure to workplace hazards. (A.R. 104-117, 122-135).

On March 3, 2016, Avila visited the Good Samaritan Hospital emergency department for evaluation of back pain and reported that he ran out of pain medication. (A.R. 556). Upon examination, he had diffuse tenderness in his lumbosacral spine and paravertebral area, and had a positive straight leg raise test. (A.R. 557). His neurological findings, including his motor, sensory, and deep tendon reflex findings, were all grossly normal. (*Id.*). He was prescribed a small amount of Tramadol for pain relief. (A.R. 559).

Later that month, a lumbar MRI taken on Avila showed L5-S1 left hemilaminectomy;

5

postoperative epidural granulation tissue touching the traversing left S1 nerve root; a slightly enlarged L4-L5 left paracentral disc herniation that touches traversing left L5 nerve root; a new L5-S1 left foraminal disc protrusion that impinges upon exiting left L5 nerve root; smaller L5-S1 central disc herniation that touches bilateral traversing S1 nerve roots; and no significant canal stenosis. (A.R. 570-71).

On April 13, 2016, Avila visited the Brockton Hospital emergency department for back pain after being a restrained driver in a vehicular accident. (A.R. 473). Upon examination, he had significant lower lumbar vertebral tenderness, decreased sensation to light touch in the L5-S1 distribution of the left foot, and weakness in dorsiflexion of the left foot. (A.R. 475). He was referred for an x-ray, which showed normal lumbar spine alignment, no fracture or dislocation, and mild to moderate disc space narrowing at L5-S1. (A.R. 475-76). He was diagnosed with a strain of the lumbar region and prescribed Flexeril and Percocet. (A.R. 476).

At a follow-up appointment with Southcoast Health on May 24, 2016, an examination showed that Avila's right shoulder had a limited range of motion; his back had a limited range of motion and paralumbar tenderness; his gait was antalgic, with a cane; he had a positive left straight leg raise test; his motor findings were all 5s; and his sensory examination of the L3-S1 dermatome was intact. (A.R. 487). He was diagnosed with post laminectomy syndrome of the lumbar region and chronic pain syndrome and prescribed Lyrica. (*Id.*).

In August 2016, Avila began physical therapy at Bay State Physical Therapy, where it was noted that he ambulated with a cane in the left upper extremity. (A.R. 495).

At a physical therapy appointment on September 9, 2016, Avila reported minor improvements in back complaints and that his shoulder was more painful than his back. (A.R. 502). His provider noted his report of decreased pain suggested a favorable response to

treatment. (*Id.*).

On September 10, 2016, Avila visited the Brockton Hospital emergency department after slipping on stairs. (A.R. 470). Upon examination, his neck had a full range of motion; his back showed tenderness and mild muscle spasm, but no sciatic notch tenderness and a negative straight leg raise test; his neurological examination showed normal reflexes and no motor sensory deficit; and he was assessed with a strain of the lumbar region and prescribed Flexeril for pain and Relafen for muscle spasm. (A.R. 471-72).

On September 13, 2016, Avila visited the Southcoast Health Facility for a pain management appointment. (A.R. 488). Upon examination, his back had limited range of motion; his gait was antalgic; he had diminished sensation in the left L5-S1 dermatome; he had full lower extremity motor findings; and he did not have any joint tenderness, deformity, or swelling. (A.R. 489). He was prescribed Baclofen and Butrans for pain management. (*Id.*).

At a physical therapy appointment later that month, Avila was noted to have antalgic gait without cane use. (A.R. 511).

On October 27, 2016, Avila visited the Orthopedic Care Physician Network with his orthopedist, Dr. Simon Chao, for a further evaluation of his back pain. (A.R. 574). Upon examination, he had no tenderness over spinous process of the spine; he had diminished range of motion of the lumbar spine and tenderness to palpation over the paraspinal muscles of the lumbar spine, but was nontender to palpation over the SI joints bilaterally and over the sciatic notches. (*Id.*). His cervical spine had full range of motion to flexion, extension, rotation, and lateral side bends. (*Id.*). He had a positive leg raise on the left, but negative Faber/Patrick's test and clonus/Babinski test. (*Id.*). His strength was 5/5 throughout the L2-S1 levels except for the left TA/EHL/GS, which were 4/5. (*Id.*). He had normal posture and non-antalgic gait. (*Id.*). His

7

deep tendon reflexes were normal in the lower extremities, and his sensation was grossly intact throughout. He was referred for an MRI to evaluate any change in neural compression. (*Id.*).

On November 14, 2016, an MRI of Avila's lumbar spine showed evidence of a prior discectomy at L5-S1 with left laminectomy defect, lumbar spondylosis, mild to moderate foraminal narrowing secondary to a disc bulge, and disc osteophyte with notable moderate narrowing of the left at L5-S1 with left neural foraminal L5 exiting nerve root encroachment. A.R. 578). There was no evidence of canal stenosis of the lumbar spine. (*Id.*).

On November 17, 2016, Dr. Chao referred Avila for a lumbar epidural steroid injection at L5-S1 for diagnostic and therapeutic purposes and advised him to continue physical therapy exercises at home and return in two months. (A.R. 580).

On January 18, 2017, Avila underwent a lumbar epidural steroid injection. (A.R. 567, 581). The next month, at a follow-up appointment with Dr. Chao, he reported no pain relief from the injection and was referred for a left L5-S1 transforaminal epidural steroid injection. (A.R. 582). He underwent the injection on March 3, 2017. (A.R. 584).

## II.     **Procedural History**

Avila filed a claim for disability-insurance benefits and supplemental security income ("SSI") in May 2015. (A.R. 76). He alleged that he was suffering from a right-shoulder injury and a back condition. (*Id.*). He alleged that his disability began on February 17, 2015. (*Id.*).

The SSA concluded that Avila was not disabled at the initial and reconsideration levels. (A.R. 88, 120).

On April 28, 2017, an ALJ held a hearing at which Avila testified about his medical and work history and a vocational expert testified that he could perform jobs that were available in the national economy. (A.R. 46-70).

On July 6, 2017, the ALJ issued a decision finding that Avila was not disabled from his

8

alleged onset date through the date of the decision. (A.R. 12-37). The ALJ found that considering his age, education, work experience, and RFC, Avila could perform work that exists in significant numbers in the national economy, supporting a finding that he was not disabled. (A.R. 31).

The Appeals Council denied Avila's request for review on March 6, 2018. (A.R. 1-6).

On May 5, 2018, Avila filed this action to review the Commissioner's decision. The Commissioner has moved to affirm the decision.

## III. Analysis

### A. Standard of Review

Under § 205(g) of the Social Security Act, this Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing. 42 U.S.C. §405(g). The ALJ's finding on any fact shall be conclusive if it is supported by "substantial evidence," and must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion," even if the record could justify a different conclusion. *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

In applying the "substantial evidence" standard, the Court must bear in mind that it is the province of the ALJ, not the courts, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of evidence. *Ortiz v. Secretary of Health & Human Servs.*, 955F.2d 765, 769 (1st Cir. 1991). Reversal is warranted only if the ALJ committed a legal or factual error in evaluating the claim, or if the record contains no "evidence rationally adequate...to justify the conclusion" of the ALJ. *Roman-Roman v. Commissioner of Soc. Sec.*, 114 F. App'x 410, 411 (1st Cir. 2004); *see also Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). Therefore, "[j]udicial review of a Social Security claim is

limited to determining whether the ALJ used the proper legal standards and found facts based on the proper quantum of evidence." *Ward v. Commissioner of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).

### B. Standard for Entitlement to Disability Benefits

In order to qualify for SSI, the claimant must demonstrate that he or she is "disabled" within the meaning of the Social Security Act. The Social Security Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to prevent the claimant from performing not only his or her past work, but also any substantial gainful work existing in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1).

An applicant's impairment is evaluated under a five-step analysis set forth in the regulations promulgated under the statute. *See* 20 C.F.R. § 404.1520. The First Circuit has described the analytical sequence as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment . . . mean[ing] an impairment 'which significantly limits his or her physical or mental capacity to perform basic work-related functions[?]' If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in . . . Appendix 1 [of the Social Security regulations]? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled. . . . If, however, his ability to perform basic work-related functions is impaired significantly (test 2) but there is no 'Appendix 1' impairment (test 3), the [ALJ] goes on to ask the fourth question:
>
> Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the

fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

The burden of proof is on the applicant as to the first four inquiries. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [ALJ] may require."). If the applicant has met his or her burden as to the first four inquiries, then the burden shifts to the Commissioner to present "evidence of specific jobs in that national economy that the applicant can still perform." *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001). In determining whether the applicant is capable of performing other work in the economy, the ALJ must assess the applicant's RFC in combination with vocational factors, including the applicant's age, education, and work experience. 20 C.F.R. § 404.1560(c).

### C. The ALJ's Findings

In evaluating the evidence, the ALJ conducted the five-part analysis called for by Social Security Act regulations.

At step one, the ALJ found that Avila had not engaged in substantial gainful activity since February 17, 2015, the alleged onset date of his disability. (A.R. 18).

At step two, the ALJ found that Avila's lower back pain secondary to lumbar spondylosis with mild to moderate foraminal narrowing and moderate narrowing of the left at L5-S1; status post lumbar laminectomy and discectomy at the left L5-S1 level; right shoulder pain status post rotator cuff repair; status post distal clavicular resection; and depression were all severe impairments under 20 C.F.R. § 404.1520(c), imposing more than a minimal limitation on his ability to perform basic work activities from the alleged onset date. (*Id.*).

11

At step three, the ALJ found that Avila did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in C.F.R. Pt. 404, Subpt. P, App. 1. (A.R. 18-19). The ALJ evaluated his severe impairments under listings 1.02 (dysfunction of a major joint) and 1.04 (disorders of the spine) and concluded that the evidence did not support a finding that met the severity listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (A.R. 19). The ALJ found that no treating or examining physician proffered findings that were equivalent in severity to the criteria of these or any other listed impairments, relying on the opinions of the state agency medical consultants who evaluated Avila's claim at the initial and reconsideration levels. (*Id.*).

At step four, the ALJ determined that Avila was unable to perform any past relevant work and had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), with the following limitations: he could only occasionally reach overhead with the right arm; he could occasionally climb, balance, stoop, kneel, crouch, or crawl, but could never climb ladders, ropes, or scaffolds; he should avoid exposure to hazards such as unprotected heights and moving mechanical parts; he required a few minutes to stretch every hour; and he would require the use of a cane for ambulation. (A.R. 21, 29). The ALJ found that he could perform simple, routine tasks. (*Id.*).

In considering Avila's symptoms, the ALJ followed a two-part process. First, the ALJ found that his medically determinable impairments could reasonably be expected to cause the alleged symptoms he claimed. (A.R. 27). The ALJ gave partial weight to Dr. McInerny's assessment, finding that with respect to Avila's lower-back pain, the assessment was generally consistent with the record, and that Avila needed to stretch each hour and ambulate with a cane. (A.R. 27). With respect to his right shoulder, the ALJ did not find sufficient evidence to

12

substantiate a limitation in his ability to push or pull with the right arm. (*Id.*). The ALJ found that a limitation to occasional overhead reaching adequately accounted for any right-arm restrictions that Avila experienced, noting that he did not pursue treatment specifically related to residual right-arm pain after the alleged onset date. (*Id.*). The ALJ gave partial weight to the consultative examination findings of Dr. Rahman, and found that his examination was not inconsistent with the evidence of record, but noted that he did not assess a specific degree of work-related abilities or limitations. (A.R. 27-28).

Second, the ALJ concluded that Avila's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*). The ALJ found that the MRI studies, including the most recent MRI from November 2016, were not indicative of disabling levels of physical impairment. (A.R. 28). He further found that Avila had been assessed with a largely normal gait during the early period after his alleged disability onset, and that more recent records indicate that he can ambulate effectively with a cane. (*Id.*). He found that although Avila continued to complain of ongoing symptoms, he achieved some degree of benefit through non-surgical modalities, including injection therapy, physical therapy, and medication. (*Id.*). He also found that Avila recently had no tenderness to palpation over the SI joints bilaterally with generally intact strength and diminished range of motion in the lumbar spine, and was consistently assessed as being neurologically intact during physical examinations. (A.R. 28-29).

With respect to his shoulder, the ALJ found that Avila did not appear to have required any specific treatment after the alleged onset date of his disability, in contrast to the extensive treatment he received for his spinal impairment. (A.R. 29). He further found that Avila did not make persistent complaints of side effects from medication or that he needed any significant

13

changes in his medication. (*Id.*). He found that his reported daily activities, including personal-care tasks, cooking, driving, shopping, socializing with family, and handling personal finances, are not generally consistent with disabling impairments. (*Id.*). Although Avila described a more limited range of daily activity, the ALJ found that his allegations did not strongly weigh in favor of finding him disabled because limited daily activities cannot be objectively verified with any reasonable degree of certainty, and even if his allegations of limited daily activities were true, it would be difficult to attribute the degree of limitation to his medical condition. (*Id.*).

At step five, the ALJ concluded that in the time between the alleged disability onset date and the date of the decision, and considering Avila's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that he could have performed. (A.R. 30). The ALJ relied on the vocational expert's testimony that someone with Avila's same characteristics could have worked as an assembler (40,000 jobs nationally), a hand packager (25,000 jobs nationally), and an inspector (13,000 jobs nationally) through the date of the ALJ's decision. (*Id.*). The ALJ found the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. (*Id.*).

In summary, the ALJ found that Avila did not suffer from a disability between the alleged onset date of February 7, 2015, and July 6, 2017, under 42 U.S.C. §§ 216(i), 223(d), and 1614(a)(3)(A). (A.R. 31).

### D. Avila's Objections

Avila raises two objections to the ALJ's decision.

#### 1. Inadequate Evaluation of the Record

First, Avila contends that the ALJ erred in finding that his back impairment did not meet or medically equal the severity of an impairment listed in C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.02, 1.04. He contends that the ALJ erroneously based his decision by solely focusing on Dr.

14

McInerny's analysis that his herniated disks did not compress his nerves, and that his diagnosis could have matched other conditions within listing 1.04 because of the length and frequency of his treatment. He further contends that even if he did not meet the requirements of listing 1.04 because he was able to ambulate effectively under section 1.00B2b, his inability to use both hands satisfied the exception under listing 1.05C, and thus the requirements of section 1.00B2b can be "subtracted."

As a preliminary matter, the ALJ did not err by basing his decision on evidence from treating and examining physicians and state agency experts, who did not find that Avila's conditions satisfied either listing 1.02 or 1.04. *See Arrington v. Berryhill*, No. 17-1047, 2018 WL 818044, at *1 (1st Cir. Feb. 5, 2018) (upholding ALJ's finding that plaintiff did not satisfy a listing for joint dysfunction or spinal disorder where no physician or state consultant reported findings sufficient to satisfy a listing).

To satisfy a listing, a claimant must present evidence of medical findings that meet all specified medical criteria or are equal in severity to all the criteria for the most similar listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 404.1526(a). The evidence must be based on objective observations during examinations and established by a record of ongoing management and evaluation. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.00D. Here, the ALJ reasonably determined that the objective examination findings failed to satisfy listing 1.04 past the absence of nerve root compression because Avila generally had normal neurological and motor findings, unaccompanied by sensory or reflex loss from April 2015 through October 2016. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04A. In addition, the ALJ reasonably concluded that the objective examination findings failed to meet listing 1.04C because Avila remained able to ambulate with a cane and did not require a hand-held assistive

15

device for both upper extremities. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.00B2b. The ALJ reasonably determined that the objective examination findings failed to satisfy listing 1.02 because Avila did not provide evidence that he is unable to perform fine and gross movements. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.00B2b. The decision was supported by the evidence, including the fact that consulting physicians did not find that Avila satisfied any listings, that he was repeatedly observed to have full muscle strength in his upper extremities, and that he was able to perform various simple tasks. Furthermore, Avila is not excepted from 1.00B2b, because the exception under listing 1.05C only applies to individuals who have use of one upper extremity due to amputation of a hand. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.00B2b.

Avila further contends that his physical and mental conditions can be combined, such that he should be found disabled under listing 1.04. However, evidence of diagnoses by themselves does not necessarily satisfy a listing and, as discussed above, he has failed to meet or equal in severity all of any listing's criteria. *Zebley*, 493 U.S. at 530-31; *White v. Astrue*, 2011 WL 736805, at *6 (D. Mass. Feb. 23, 2011).

### 2. **Failure to Assess the Evidence**

Avila next contends that the ALJ failed to analyze all available evidence, including MRI data on his back condition, and the fact that evidence of nerve root compression is only one factor under listing 1.04. He further contends that the ALJ failed to adequately state the reasons why his ailments did not meet or medically equal impairments in listings 1.02 and 1.04. He relies on *Arsenault v. Astrue*, 937 F. Supp.2d 187, 189 (D. Mass. 2013), which was remanded for failure to evaluate the evidence when the ALJ explained that a listing was not satisfied in a conclusory section header.

Avila has not shown that the ALJ failed to adequately consider all available evidence in making his determination. An ALJ "can consider all the evidence without directly addressing in

his written decision every piece of evidence submitted by a party." *See N.L.R.B. v. Beverly Enterprises-Mass.*, 174 F.3d 13, 26 (1st Cir. 1999). Here, unlike *Arsenault*, the ALJ adequately explained his basis for finding that no listing was met, as discussed above.

Avila next contends that the ALJ failed to further develop deficiencies in the record. He does not explain how the record is deficient or how it could be further developed. Even where an ALJ fails to develop the record fully, "remand is appropriate only where the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing." *Veiga v. Colvin*, 5 F. Supp. 3d 169, 177 (D. Mass. 2014) (quoting *Evangelista v. Secretary of Health and Human Servs.*, 826 F.2d 136, 139 (1st Cir. 1987)). Here, Avila does not point to specific deficiencies in the record, or identify any specific further evidence that would be necessary to develop the facts of the case.

Accordingly, the Appeal Council's decision to decline review of Avila's case was not an error requiring reversal.

## IV. Conclusion

For the foregoing reasons, the motion of defendant to affirm the decision of the Commissioner is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor, IV
Dated: June 20, 2019  United States District Judge